**SO ORDERED.**

**SIGNED December 23, 2009.**



**HENLEY A. HUNTER**
**UNITED STATES BANKRUPTCY JUDGE**

---

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

IN RE: VERNA MAE BRADFORD                    CASE NO. 09-81251

IN RE: CHRISTOPHER G. DESELLE                CASE NO. 09-81270
    ANGEL N. DESELLE

IN RE: STEPHEN KENT MORELAND                 CASE NO. 09-80600
    MARCY FORD MORELAND

**REASONS FOR DECISION ON**
**OBJECTIONS TO COMPENSATION IN CHAPTER 13 CASES**

    These matters come before the Court on the Chapter 13 Trustee's Objections to the confirmation of the debtors' Chapter 13 Plan based on his assertion that the proposed compensation to counsel to the debtors is excessive. These are core proceedings pursuant to 28 U.S.C. §157(b)(1) and (2)(A) and (L). Jurisdiction is proper per 28 U.S.C. §1334 and by reference from the District Court pursuant to Local District Court Rule 83.4.1, incorporated into Local Bankruptcy Rule 9029.3. No party has moved to withdraw the reference and the district court has not done so on its own motion. This Court makes the following findings of facts and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

In two of the three above-captioned cases, arguments were presented in open court, as summarized below.

**The Bradford Case**

The Chapter 13 Plan in this case provides for a proposed fee of $1,500.00 to be paid to the counsel for debtor(s) from the plan payments made to the Chapter 13 Trustee. The plan payments to be paid by the debtor(s) are $100.00 per month for 36 months. The debtor had not attended the Section 341 meeting and was not current on payments at the time of the hearing on confirmation. An objection was filed by the standing Chapter 13 Trustee, asserting the attorneys fees were excessive.

Counsel to the debtor was present and argued at the hearing that his time sheets reflect more time devoted to this case than is "normally" the case in a low payment/ low dividend plan. Counsel to the debtor voluntarily offered to file and notice a separate application for compensation, rather than confirming the plan, and the debtor would file and notice an amended plan. Counsel to the debtor noted that these objections are usually settled with the Chapter 13 Trustee.

**The Deselle Case**

The Chapter 13 Plan in this case provides for a proposed fee of $1,500.00 to be paid to the counsel for debtor(s) from the plan payments made to the Chapter 13 Trustee. The plan payments to be paid by the debtor(s) are $125.00 per month for 60 months. In this matter an objection was filed by the standing Chapter 13 Trustee, asserting the attorneys fees were "incorrect," which the argument presented at the trial of this matter clarified that the Trustee asserts the fee is excessive.

Counsel testified that he interviewed the debtors in April of 2009 concerning the possible filing of a Chapter 13. With no case yet filed, on September 15, 2009, the debtors called counsel to the debtor to report that they could not afford the fees for a Chapter 13 case, which had been quoted

2

at $400.00 down for court costs and attorney fees to be paid from the Chapter 13 plan payments. Counsel agreed the firm would advance the court costs. Counsel admits the fee violated the so-called (heretofore) unofficial "10 month" or "10% rule" in that the monthly plan payment is less than 10% of the fee requested. Counsel urges the fees requested are reasonable based on the value of the services to the debtor and the estate. He urged fees to be granted based on quality of legal work, valuing the "atypical" legal services required in some cases notwithstanding the fact that the debtor's disposable income yields a low payment/low dividend plan.

Counsel to the Chapter 13 Trustee stated in Court that failure to adhere to the "10 % rule" is becoming a nation-wide problem, recently addressed at a conference of Chapter 13 Trustees. Put simply, if the maximum hourly compensation is charged in such cases, the result is that the debtor must make payments for months or years (frequently towards the attorney fees alone) before a single creditor is paid at all.[1] The Trustee's counsel also argued that such plans are not cost-effective for the operations of the offices of Standing Chapter 13 Trustees, and acknowledged that the Chapter 13 Trustee's obligation is to scrutinize the amount of fees charged in the best interest of the estate and the unsecured creditors.

Counsel to the debtor stated that in his 23 years of practice, his average amount of time spent on a typical Chapter 13 case falls somewhere between 12 ½ —14 hours, the time estimate reflected in the general order of the Bankruptcy Court of the Eastern District of Louisiana.[2] Counsel also advised that he was aware of an obligation within the "system" to perform pro-bono work for clients

---

[1]But for the concerns of Congress militating in favor of relief under Chapter 13, these debtors might receive more benefit from the Chapter 7 discharge. The distribution test objection is frequently raised in such cases, on the basis that the creditors might likewise receive a greater distribution in a liquidation case.

[2]*See* Exhibit D-3, General Order No. 2007-2.

3

whose disposable income would yield a low dividend plan, and acknowledged that some of his cases involving low-payment/dividend plans were the result of referrals from Legal Services of Central Louisiana, for which and from whom he received an award for his contribution in pro bono services. He also received recognition from the Louisiana State Bar Association for such services.

Finally, counsel argued against the option of filing a fee application, as was voluntarily submitted to by counsel in the Bradford case, in each and every Chapter 13 case, since that would add an estimated 1 ½ hour per case, which would also be compensable under the case law.[3] He also argued that out-of town counsel who practice in the various divisions would have to burden their clients with the travel expense incurred in attending a separate hearing on a fee application in every case. In conclusion, he urged that guidelines were sorely needed by the bar, particularly in view of reports of concerns raised by the district court about compensation in the Western District of Louisiana, and a recent increase in the "no-look" fee. Counsel also expressed his concerns regarding the national and regional economy as militating against raising compensation.

Finally, counsel was asked whether voluntary concessions or adjustments of fees were made in his practice. He acknowledged that, at the request of clients, fees paid in connection with representation in a Chapter 7 case were sometimes credited against the amounts charged for representation in Chapter 13 work. A Chapter 7 case might be converted post-discharge to a Chapter 13 to address a lien securing a claim on which the debtor's personal liability may have been discharged. In many cases, a successive case addressed such liens, not infrequently labeled a "save the house plan."[4] In the event of a conversion of a Chapter 7 case to Chapter 13, the statements and

---

[3]This option would also impose an insurmountable time and resource burden on Bankruptcy Courts.

[4]Counsel acknowledges that a "*de minimis*" plan (one which calls for a very low monthly payment) could rarely mathematically save a house or vehicle.

4

schedules may not require amendments.[5]

### The Moreland Case

A modification to the Chapter 13 Plan in this case provides for a proposed fee of $3,000.00 ($2,500.00 representing the standard "no-look" fee plus $500.00 for the modification) to be paid to the counsel for debtor(s) from the plan payments made to the Chapter 13 Trustee. The plan payments to be paid by the debtor(s) are $870 per month for the balance of the 60 months. In this matter an objection was filed by the standing Chapter 13 Trustee, asserting the attorneys fees appear excessive.

However, counsel to the debtors moved to continue confirmation of the plan to January 21, 2010, and in the meantime, voluntarily agreed to amend the plan to address the Chapter 13 Trustee's objection.[6]

### The History of Chapter 13 "No-look" Fees

A history of the "no look" fee will show that Congress has consistently expanded and encouraged Chapter 13 in lieu of Chapter 7 liquidation. Its origins in the English Bankruptcy Act of 1883 were contained in the United States Bankruptcy Act of 1898, wherein a court-supervised means for the rehabilitation of a wage-earner was introduced. The Great Depression led to revisions of the 1898 Act entitled "Provisions for the relief of debtors," followed by various courts setting up special procedures under §74 of the Act. Congress used this framework in crafting the wage earner provisions in Chapter 13 of the Chandler Act of 1938. In 1970, Congress established a commission to study the bankruptcy laws, following criticism of the Chandler Act. When many deficiencies in the system were identified, the Bankruptcy Reform Act of 1978 addressed them by expanding access

---

[5]*See* F.R.B.P. 1019.

[6]This Court would customarily view any modification prior to confirmation as encompassed by the "no look" fee.

5

to Chapter 13 to a broader class of debtors, namely almost anyone with "regular income." In 1984, Congress further amended the Code by encouraging greater use of Chapter 13 and discouraging Chapter 7 liquidation by debtors who could pay a portion of debts from future income over a reasonable period of time. Further amendments followed in 1984, 1986, and 1990, at which time the discharge available to Chapter 13 debtors was restricted by making student loans and liabilities incurred on drunk driving and restitution claims nondischargeable. In 1994, the eligibility ceiling for Chapter 13 relief was raised from $350,000 to one million, greatly increasing the availability of Chapter 13 as an option to debtors. Further changes were enacted in 1998. In 2005, BAPCPA made sweeping changes to the bankruptcy laws, arguably based on a perception of abuse of the laws by consumer debtors, with the proponents of the changes indicating that the intent was to compel more debtors to both file under Chapter 13 and to divert payments from general unsecured creditors to certain secured claimants.[7]

In short, the former "wage earner" plan available to debtors with regular income and debts below a modest ceiling has emerged as a formidable tool for debtors with low to extremely high incomes and an immense debt load.[8] On the other hand, the discharge relief available under a Chapter 13 has been reduced, but few bankruptcy practitioners or experts would disparage the valuable benefits afforded to Chapter 13 debtors. Indeed, Congress has repeatedly encouraged the use of Chapter 13 as an alternative to a liquidation bankruptcy by repeatedly expanding its availability.

The "no-look" fee was conceived in the day of wage-earner plans. As the legislation added more benefits available to the debtor, the responsibilities of debtors' counsel expanded. For many

---

[7]This history is summarized from Overview of Chapter 13, §§139.1-13, Norton Bankruptcy Law and Practice 3Ed.

[8]Presently, the debt load, after the most recent adjustment for inflation, is $336,900 (unsecured) and $1,010,650 (secured). 11 U.S.C. §109(e).

6

years, little more than the legal culture of a district or division "fixed" the fee customarily awarded counsel to debtors.  Simply put, a "no-look" fee is a presumptively fair rate of compensation in lieu of a more intense and independent review of each and every pre-confirmation fee application in a Chapter 13 case. The practice has been recognized as consistent with 11 U.S.C § 330(a)(4)(B) and F.R.B.P. 2016.  *See In re Tuttle,* 2009 WL 1789286 (Bankr.E.D.Va. 2009)(presumptive fee in that division set by standing order); *In re Murray,* (Bankr.E.D.Pa. 2007 WL 2317523)(unreported) ("The court's obligation to engage in an independent review of requests for compensation from the estate is tempered somewhat by the principle that bankruptcy courts should not 'become enmeshed in a meticulous analysis of every detailed facet of the professional representation [to the point] . . . that the inquiry into the adequacy of the fee assume[s] massive proportions, perhaps even dwarfing the case in chief.'" p.3 citing, *In re: Busy Beaver Bldg. Centers*, 19 F.3d 833, 845 (3d Cir. 1994)); *In re Eliapo*, 468 F.3d 592 (9th Cir. 2006); *In re Chapter 13 Fee Applications*, 2006WL2850115 (Bankr.S.D.Tex. 2006); *In re Smith*, 331 B.R. 622, 629-30 (Bankr.M.D.Pa. 2005).

In this District, the "no-look" fee was substantially modified following the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.  This Court was not alone in making adjustments.  Although the reasons for the change were not memorialized, the analysis was not unlike that discussed at length in *In re Chapter 13 Fee Applications*, (Bankr.S.D.Tex. 2006 WL 2850115). That case began with the filing of a Motion by a Standing Chapter 13 Trustee to reconsider the Court's prior standing order concerning "no look" fees, in which the Trustee supported an increase to $2,700.00 or $3,085.00, dependant upon whether the case proceeded past confirmation for at least 120 days, and whether or not the applicant sought to be paid on a "first out" basis (not including the filing fee), or the larger sum, including expenses, if the applicant agreed to be paid one-half "up front" and the balance (including expenses) and the rest paid over the life of the plan.

7

Responses were filed by a Chapter 13 Practitioner, attorneys *ad litem* appointed to represent the interest of Chapter 13 Debtors, and by the Houston Association of Debtors' Attorneys Regarding Chapter 13 Debtor Attorney Fees. Notably, the last response asserted that its membership's views on the subject were not unanimous. Some of its members preferred and some opposed a fixed fee system.[9] The response of the Chapter 13 practitioner, Doc. 5, indicated he had ceased to use the fixed or "no look" fee in its entirety, opting to file a fee application in each case post BAPCPA. He recommended an increase not to exceed $2,800.00. There is consensus in the responses, however, to the extent that the new requirements of BAPCPA strongly supported an increase, but little agreement as to the proposed amount.

Other Courts have examined their no-look fees since BAPCPA. In the Eastern District of Louisiana, General Order No. 2007-2 raised the no-look fee for cases filed after April 23, 2007, to $2,250.00 for below means test debtors, and to $2,520.00 for those above the means test. (Exhibit D-3, Case 09-81270.) Exhibits to the Order detailed the services encompassed by the same and those not affected, including those involving the preparation and filing of a plan, schedules, statement of affairs as required, filing motions to protect debtors' interest, objecting to claims, attending the confirmation hearing, and preparing and filing the necessary pleadings to regarding the discharge. Importantly, the orders envisioned the continued representation of the debtors for 120 days following confirmation. The Orders excluded representing the debtors in various matters, including an adversary proceeding; an "extraordinary" contested matter; or matters where the first hearing was set more than 120 days following confirmation.[10] The Northern District of Texas also adopted an

---

[9]The latter response attached an Exhibit, Document 10, showing the "No Look" fee in other jurisdictions, including the Western District of Louisiana.

[10]There are slight differences between the Exhibits between the judges in that court respectively assigned to Section A and Section B.

8

Amended Standing Order effective for cases filed after the effective date of BAPCPA and thereafter. In its most recent version, it deemed $3,000.00 as the "standard fee" in an individual, non-business case, with a list of guidelines as to what matters such a fee encompassed. It deemed $3,500.00 as appropriate in a business case.

The Northern District of Mississippi revised its Standard Order as to cases filed after August 1, 2007, to indicate that the court would "generally approve a fee for the attorney for the debtor of *up to* $2,500.00." (Exhibit D-1, emphasis supplied.)

One court has taken the novel approach of abandoning the "no look" fee entirely, electing to apply a "market approach." (*See* In re Compensation of Attorneys in Chapter 13 Cases, General Order No. 6-2006, United States Bankruptcy Court, Northern District of Georgia.) Nonetheless, the Court set out guidelines, commencing with the proposition that the fee and the method of payment should be reasonable under both 11 U.S.C. §330(a) and the ethical requirements of the State Bar of Georgia. Accordingly, the Court noted that it could require the return of excessive fees. Debtor's attorneys were charged with furnishing each debtor a copy of a "Rights and Responsibilities" attachment to the order, and to certify accordingly in the Rule 2016(b) disclosure statement. Failure to perform the duties set forth in the document might result in the reduction or disgorgement of compensation. One of the judges of that Court commented that the "market base"approach had been successful, with few problems encountered. The writer recognized, however, that although this approach imposed greater duties on the Chapter 13 Trustee in scrutinizing fees, minimal objections had in fact had to be decided by the court. Instead, debtor's counsel might have to agree to a different fee or furnish the trustee information to support the fee requested. Nonetheless, the writer observed:

> "Also, since the objection to the fee is served upon the debtor, some tension

9

may be created between the lawyer and his client that would not be present with the prior 'no look' fee. The fees paid to debtor's attorneys, however, vary widely from $1,500.00 to $5,500.00 per case and the same law firm may charge different fees to different clients. The is the precise result the Standing Order was designed to promote."

"The 'market based' approach is founded on the fact that every case is unique. It allows a Chapter 13 debtor to shop around for the best fee, while allowing attorneys to exercise their ethical obligations to charge a client based on the particular circumstances of the case."

Diehl, Mary Grace, "A Market Based to Debtor's Attorney Fees," http://www.nacttacademy.com/Content/Public/ConsiderationsHome.aspx.

While the "no look" fee might be seen as pretermitting the need for court review of fees, that is not the case. One court observed that even where it had adopted a "no look" fee or a "Presumptively Reasonable Fee," the establishment of same "does not unalterably 'fix' the reasonableness of a fee an attorney for a chapter 13 debtor may charge. *In re Debtor's Attorney Fees in Chapter 13 Cases*, 374 B.R. 903, 909 (M.D.Fla. 2007). It noted that the establishment of such a fee did not mean that a chapter 13 debtor's counsel could not agree to represent debtors for a *lower* fee. It observed, "The Court urges attorneys to do so in appropriate cases when circumstances suggest that the result well be a less substantial expenditure of the attorney's time."[11]

---

[11]The order issued by the Texas court first came under scrutiny in *In the Matter of Cahill*, 428 F.3d 536 (5th Cir. 2005). There, the Fifth Circuit recognized that the use of the pre-calculated lodestar amount in the general order addressed the need for both efficiency and flexibility in handling large numbers of cases, the order also anticipated that courts evaluating traditional fee applications would continue to do so on a case-by-case basis, ensuring that the lodestar amount in an *atypical* case is adjusted to reflect the specifics of the same. The order again came under scrutiny in *In re Hernandez*, 2007 WL 1886279 (S.D. Texas). There, the applicant sought compensation above the maximum "no-look" fee, itemizing only the time in excess of that encompassed in the no-look amount. The bankruptcy court rejected the request, denying all compensation. The district court observed that the order adopted by the bankruptcy courts envisioned an opt-out from the no-look fee arrangements, not a mixture. On appeal, the district court held that the bankruptcy court had not abused its discretion in denying the fee application as it was presented, but remanded the case for consideration of a fee award based on hourly billing for the work performed.

*Id.* Where a court has not adopted a flat fee, a practice may arise based on other factors. For example, in *In re Smith*, 331 B.R. 622 (M.D.Pa. 2005), the court observed that, although it had not adopted a flat fee, the Chapter 13 Trustee set a policy of not objecting to fee requests of $2,500.00 or less without a fee application.

In a pre-BAPCPA case, *In re Walker*, 319 B.R. 917 (S.D.Ga. 2004), the Chapter 13 Trustee objected to the fee of $1,500.00 in three cases, although the court, by local rule, had adopted a "no look" fee in that amount. Debtor's attorney had been accustomed to advising his debtors that the fee had been set by the Court. The court rejected this argument, noting that the local rule, while providing for the approval of a fee of $1,500.00 in the absence of an objection, attorneys were also instructed to reduce their fees in accordance with the Rules of Professional Conduct, observing that the court was placing its trust in the attorney not to seek a fee greater than that to which he or she was entitled. The court observed that, while the benefits of the "no look" fee were clear, inasmuch as it greatly facilitated the administration of numerous bankruptcy cases, there were detriments. It observed that one potential problem was the failure of counsel to exercise the judgment in billing required by the rule. The court also noted the effect of the rule on competition in the marketplace, particularly on the fact that the fees in Chapter 13 cases are dramatically higher than those for Chapter 7 cases. It asserts that no reasonable person reading the rule would arrive at the conclusion that the court had set a fee of $1,500, but that an unintended consequence of the rule had led to that amount being established as the standard fee. It observed that the result was not unfair in most cases, but was unfair in the cases under consideration. Further, the result of the practice was that debtors with less complex cases end up unfairly subsidizing the cost of more complex cases.

One court described the dilemma created by the "no look" fee. *In re Smith*, 331 B.R. 622,

11

fn.9 (M.D.Pa. 2005). First, a court must establish a reasonable fee, as attorneys may receive a windfall if the fee is too high or routinely file additional fee applications if a fee is too low. Secondly, the court must establish a procedure for compensating attorneys who perform services that are not routine, in which event the use of the lodestar fee method is the appropriate remedy. The court noted that while some courts have established a schedule of maximum fees, it observed that one California court set a range of "no look" fees for a basic case with increases for additional factors that might be present. This option seems to fix a "floor" for a flat fee, as opposed to a ceiling.

Here and now, the bench and bar in the Western District of Louisiana have become acclimated to the changes in BAPCPA, with the adoption of new national rules and forms, and the fact that some of the critical issues posed by the Act have been decided by the United States Court of Appeals for the Fifth Circuit.[12]

Following the enactment of BAPCPA, the caseload of the bankruptcy courts dropped precipitously, but that was offset by a staggering number of cases filed just prior to its effective date. The filings continued on a relatively flat basis for a few years. Recently however, both the case filings on a national and district-wide level have markedly increased. This may relate to a highly publicized nation-wide mortgage crisis and rising unemployment, factors which militate in favor of the Trustee's more intense scrutiny of fees charged to debtors seeking bankruptcy relief.

While the caseload has gone up, the cost of filing a bankruptcy petition has likewise increased. Under 28 U.S.C. §1930(a) the Chapter 13 filing fee is $235.00, together with an administrative fee,

---

[12]For instance, the effect of the so-called "hanging paragraph" in 11 U.S.C. §1325(a)(5)(C) was debated extensively in bankruptcy courts and academic settings, but has been interpreted in *In re Miller*, 570 F.3d 633 (5th Cir. 2009) and *In re Dale*, *582* F.3d 568, 2009 WL 2857998 (5th Cir. 2009).

for a total of $274.00. Adding to the expense is the debtors requirement to undergo pre-and-post-filing credit counseling to qualify as debtors and receive a discharge. Some attorneys routinely obtain credit reports from various credit reporting agencies, which are used to verify accuracy in the preparation of the schedules. Research of the public records, the costs of lien searches (mortgage certificates), increase the burden on the debtors and their counsel.

Accordingly, after careful consideration, on October 23, 2009, the three sitting judges in the Western District of Louisiana met and agreed to change the "no-look" fee in Chapter 13 cases to a "cap" of $2,800.00, with no distinction between the cases of debtors whose income falls below or above the median income.[13,14] Subsequently, a standing order was issued in another division of this district adopting a "sliding scale" as a basis for awarding compensation.

This Court, however, eschews adopting a complex mathematical procedure that (1) severely burdens clients who deserve a simple explanation of the fee to be paid at the inception of the case (i.e., deserve to know the cost of legal services when they leave the initial consultation); and (2) burdens the Chapter 13 Trustees by focusing on complicated calculations, rather than upon the reasonableness of the compensation requested *vel non*, these being only the primary policy concerns.[15] Likewise, this

---

[13] In Chapter 13, calculations under Form B22C play a role in determining the term of the debtors' plans, by identifying them as above or below median income under the "means test" added by BAPCPA. In Chapter 7, debtors having primarily consumer debts and whose income falls above the median after the application of the "means test" are considered to be more likely candidates for relief under Chapter 13. Prior to this change, the Shreveport and Monroe Divisions distinguished between the median incomes in fixing a "No-Look" Fee. The Alexandria, Lafayette and Lake Charles Divisions had no such distinction.

[14] This upward adjustment to the fees, it should be noted, is still less than the amount the Texas Court and other courts discussed herein set after review of the fee dilemma and less-than-unanimous responses to same.

[15] This Court is fully aware of the perils of promulgating broad rules as opposed to treating matters on a case-by-case basis. *See In re Standing Order with Reasons Regarding Objections to the Discharge under 11 U.S.C. §727 and Purported Settlement of Actions*, 272 B.R. 917 (W.D. LA 2001).

court is extremely reluctant to consider the Georgia Court's approach of abandoning the "no look" fee entirely, for many reasons, not the least of which include pursuing a policy uniformity within the Western District of Louisiana.

Ultimately, the bench and the bar share a duty to monitor compensation. This Court is not unmindful of the unbridled criticism focused on a Chapter 11 practitioner's itemized fee applications, where, taken literally, his calculations suggested that he billed more than 24 hours a day on more than one date in multiple cases. *See In the Matter of Evangeline Refining Company*, 890 F.2d 1312 (5th Cir. 1989). While the bankruptcy courts have the power to review fee requests in cases under Title 11, including those in Chapter 13, *sua sponte,* the bar has an obligation to police itself. Under Rule 1.5, Art. 16, Rules of Professional Conduct, a lawyer is prohibited from making an agreement for, charge, or collect an unreasonable fee. The factors bearing on the reasonableness of a fee are set forth therein. The Court should not have to remind the bar that, notwithstanding any increase in the no-look fee, this Court has no intention of departing from its view that the maximum no-look fee is just that: ***It is a ceiling, not an entitlement***. At the end of the day, debtors' counsel should step away from the plate, rather than up to it, recognizing the need for cost-effective access to the courts.

### Application to the Cases at Bar

All counsel in these cases are commended for their voluntary efforts to address the objections of the Trustee. Counsel in the Bradford and DeSelle cases both are commended for requesting far less than the maximum "no look" fee presently recognized in this District, implicitly recognizing a established practice established in this division for more than 22 years. In this division, to this court's recollection, since 1987, every single Chapter 13 Trustee has repeatedly objected to a request for the maximum "no-look" fee in cases involving "*de minimis*" payments. Although the objections have frequently been resolved informally by negotiations between the Standing Chapter 13 Trustee and

14

counsel to the debtor, something more formal is required at this time. When the goal of the debtors in Deselle and Bradford is to attempt to pay a portion of their debts, but the disposable monthly income available for plan payments of $100.00 and $125.00, respectively, their plans qualify as "*de minimus*," at which rate it would take twelve to fifteen months just to pay the attorneys fee of $1,500.00. When in such a case, this Court finds the goal and the client are better served by limiting the attorney fee to a total amount of compensation that can be paid in less than one year, ten months, so that the creditors can start being paid within the first year of the plan. A formal adherence to the "10 %" rule provides a reasonable balance between allowing earned compensation and affording access to the Court in a Chapter 13 case. Accordingly, it is the ruling of this Court that the monthly payment must exceed 10% of the total compensation proposed to be paid to the debtor's attorney in the Chapter 13 Plan.

Turning to the Moreland case, wherein counsel to the debtor requested not only the "no-look" fee but also a fee for a pre-confirmation amendment, counsel to the debtor agreed to withdraw the request in the filing of an amended plan. However, like many other courts have done, it is time to articulate just what legal services are contemplated as included in the "no-look" fee. This Court takes the position that the "no-look" fee should include all appearances and filings required to reach successful confirmation, which may require multiple attempts (i.e. amendments to the Plan pre-confirmation). This Court suggests that post-confirmation modifications arriving promptly on the heels on a confirmation order are suspect and worthy of increased scrutiny. There may be circumstances when such action is required, but they should be the exceptions, not the rule.[16]

---

[16] The Texas court viewed the no-look fee as including all work through 120 days after confirmation. It reduced fees for cases dismissed before confirmation or within 120 days thereafter. (This Court usually allows payment from funds in the account of the Chapter 13 Trustee for cases dismissed at various stages. More often than not, there are no funds on hand, or the those funds are substantially less than the reduced amount used by the Texas Court.) It also explained particular

In accordance with the foregoing, this Court finds the $2,800.00 "no look" fee to be a fair ceiling on proposed compensation in a Chapter 13 case, subject to the following voluntary (but highly recommended) negative adjustments:

I.

$200.00 from the "no-look" fee when the Chapter 13 Plan does not include a house payment provision or when the Chapter 13 Plan proposes to surrender the family home.

II.

$200.00 from the "no-look" fee when the Chapter 13 Plan surrenders one or more vehicles, unless the vehicle is a "910" vehicle as contemplated by §1325(a)(5) and the "hanging paragraph."

III.

$200.00 from the "no-look" fee when the Chapter 13 Plan is filed on behalf of an unmarried debtor who is not a domestic support obligor.

IV.

$100.00 from the "no-look" fee when the Chapter 13 Plan is filed on behalf of a debtor who has filed a previous case within one year of the filing of the instant case with the same counsel.

V.

When the Chapter 13 case is one converted from a case under Chapter 7, or a Chapter 13 case is filed by the same counsel utilized by the debtor in the Chapter 7 case within

---

additional amounts that would be deemed acceptable for services not related to confirmation, an issue that is not poised before this Court for consideration.

120 days, the "no-look" fee is subject to a reduction of the entire fee paid by the debtor in the Chapter 7 case.

## VI.

HOWEVER, THE TOTAL OF THE ABOVE VOLUNTARY ADJUSTMENTS SHALL NOT REDUCE THE "NO LOOK" FEE REQUESTED TO LESS THAN $2000.00, EXCEPT AS FOLLOWS:

In cases where the debtor's monthly payment to the Chapter 13 Trustee and dividend to the unsecured creditors is "*de minimus*," but represents a debtor's fair attempt to repay some debts in lieu of filing a Chapter 7, the monthly payment must exceed 10% of the total compensation proposed to be paid to the debtor's attorney in the Chapter 13 Plan.[17] In such a case, the foregoing suggested voluntary deductions need not apply.

## VII.

The "no-look" fee shall contemplate all ordinary services up to confirmation of the Chapter 13 Plan, and 120 days thereafter, and all necessary filings for obtaining the Order of Discharge, and shall include one *Mendoza* modification.

Finally, another problem is encountered in motions for post-confirmation compensation lacking a readily accessible report of the compensation previously approved and paid, unlike the situation in Chapter 11 cases, where that calculation is required. All applications for compensation subsequent to confirmation should disclose the dates of previous orders on interim compensation or reimbursement

---

[17]Put another way, for example, when the plan payment is $150 per month, the fee contemplated by the plan cannot exceed $1,500.00.

of expenses along with the amounts requested and the amounts allowed or disallowed, reflecting all amounts actually paid. and the amount of any allowed fees and expenses, and any payments received from any source.[18]

Notwithstanding the foregoing, nothing in these reasons shall be construed to preclude debtor's counsel opting to file a fee application using the lodestar method) and noticing the same for a hearing. All requests for compensation for post-confirmation modifications shall be noticed with the proposed modification and shall itemize all compensation awards in the case by date and amount in a form substantially similar to that shown on the attachment. Further, nothing in these reasons and Order shall be construed to curtail the Court's reserved right to *sua sponte* reduce compensation for any failure of the debtor's counsel to make required appearances on behalf of debtor or for debtor's failure to make required filings due the Clerk of the Bankruptcy Court when such failures are attributable to debtor's counsel, nor shall these reasons preclude any objection by the Standing Chapter 13 Trustee or the United States Trustee.

### Conclusion

For the foregoing reasons, the Objections of the Chapter 13 Trustee to these Chapter 13 Plans for Confirmation are **SUSTAINED**; and a separate and conforming Order shall enter allowing each debtor fourteen (14) days to Amend their Plans consistent with the Ruling herein. Exhibit A to these Reasons is a proposed form showing the election of debtor(s) and their counsel regarding compensation, including itemized adjustments made considering the specific facts of each case, to be filed as an Addendum to the Attachment to the Attorney Fee Disclosure. Exhibit B to these Reasons

---

[18]This Court does view LBR 2016-1(D) as permitting applications for attorney fees or reimbursement of expenses totaling less than $1,000.00 applicable to Chapter 13 cases where the *total* of compensation or expenses already approved or reasonably anticipated to be sought exceeds that sum. The piecemeal use of this rule in Chapter 13 cases poses a risk of abuse.

is a proposed form to be attached any separate fee application, and all post-confirmation modifications in which debtor's counsel seeks additional compensation beyond the amount fixed in the Order of Confirmation.

# # #

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

**IN RE: (Debtor)**                                                          **CASE NO. xx-xxxxx**

**ATTORNEY FEE ADDENDUM IN CHAPTER 13 CASE**


       Pursuant to the Chapter 13 Plan filed herein, and considering the facts and time involved in this particular matter, debtor(s) and counsel to the debtor makes the following election regarding compensation for representation in the above-captioned case:

_____          Debtor(s) and Counsel to the debtor(s) make the $2,800.00 "no look" election, subject to the following voluntary negative adjustments:

I.

– $ _____       $200.00 from the "no-look" fee when the Chapter 13 Plan as this Plan does not include a house payment provision/or the Chapter 13 Plan proposes to surrender the family home.

II.

– $ _____       $200.00 from the "no-look" fee as the Chapter 13 Plan surrenders one or more vehicles, and the vehicle is not a "910" vehicle as contemplated by §1325(a)(5) and the "hanging paragraph."

III.

– $ _____       $200.00 from the "no-look" fee as the Chapter 13 Plan is filed on behalf of an unmarried debtor who is not a domestic support obligor.

IV.

– $ _____       $100.00 from the "no-look" fee as the Chapter 13 Plan is filed on behalf of a debtor who has filed a previous case within one year of the filing of the instant case with the same counsel.

V.

– $ _____       This Chapter 13 case is one converted from a case under Chapter 7/or is filed by the same counsel utilized by the debtor in the Chapter 7 case within 120 days, the "no-look" fee is subject a reduction of the entire fee paid by the debtor in the Chapter 7 case.

VI.

$ _____       Total Compensation contemplated after adjustments, subject to the $2,000.00 "floor."

-OR-

_____          The debtor's monthly payment to the Chapter 13 Trustee qualifies as  "*de minimus*," such that the monthly payment must exceed 10% of the total compensation proposed to be paid to the debtor's attorney and the foregoing suggested voluntary deductions do not apply. Counsel request the compensation be fixed at $_____.

-OR-

_____          Debtor(s) and counsel to the debtor(s) elect to file a separate fee application in this case pursuant to 11 U.S.C. §328, F.R.B.P. 2016 and LBR 2016-1 in lieu of electing the "no look" fee and accompanying guidelines.


_____   _____
Signature of Debtor's Counsel     Date

# # #

EXHIBIT B

**UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION**

IN RE: (Debtor)                                                    **CASE NO. xx-xxxxx**

**ADDENDUM TO REQUEST FOR COMPENSATION IN A CHAPTER 13 CASE FOR MODIFICATIONS, OBJECTIONS,
AND OTHER POST-CONFORMATION SERVICES (WHEN COUNSEL HAS ELECTED THE "NO-LOOK" FEE)**[1]

       Pursuant to the Chapter 13 Plan filed herein, the Attorney Fee Disclosure and Addendum filed therewith,
and Considering the Request for Compensation for Post-Confirmation Services filed herewith described as follows:

_____, Counsel shows:
(Modification to Plan, Objection to Claim, etc.)

I.

List by date(s) and amount(s) the total compensation and expenses previously requested in this case to date:

Amount           Date

$_____            /  /
$_____            /  /     Compensation        Expenses

(1) TOTAL PREVIOUSLY REQUESTED:  $_____      $_____

(2) AMOUNT OF COMPENSATION AND
EXPENSES PREVIOUSLY REQUESTED, IF
ANY, THAT WERE DISALLOWED:     $_____      $_____

(3) SUBTRACT LINE (1) FROM LINE (2):  $_____      $_____

(4) ENTER TOTAL ACTUALLY PAID TO
COUNSEL TO DATE BY THE CHAPTER
13 TRUSTEE, DEBTOR(S), OR ANY OTHER
SOURCE FOR COMPENSATION/EXPENSES: $_____      $_____

(5) Subtract line (4) from line (3): $_____     $_____
      (Balance due)

II.

(6) Amount requested for this Post-Confirmation Service listed above:   $_____

_____     _____
Signature of Debtor's Counsel     Date

_____

     [1]If Debtor(s) and Counsel to Debtor(s) have elected to file a separate fee application in this case pursuant to
11 U.S.C. §328, F.R.B.P. 2016 and LBR 2016, this addendum should not be used.  In no event shall the court
entertain a fee application for compensation or expenses in a Chapter 13 case in accordance with LBR 2016-1(D),
whether or not Counsel has elected the "no-look" fee or to file a separate fee application, unless the *total* of
compensation and expenses requested and to be requested for the life of the plan are less than $1,000.00.